UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JULIE DERMANSKY,

      Plaintiff,      **MEMORANDUM & ORDER**
                  19-CV-1149 (PKC) (PK)
  - against -

TELEGRAPH MEDIA, LLC,

      Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

  Plaintiff Julie Dermansky commenced this action on February 26, 2019 against Defendant Telegraph Media, LLC ("Telegraph") for copyright infringement under Sections 101 and 506 of the Copyright Act, 17 U.S.C. §§ 101, 506, and for the removal and/or alteration of copyright management information under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, based on Defendant's alleged unauthorized reproduction and public display of a copyrighted photograph of a taxidermy animal, owned and registered by Plaintiff, a professional photographer. (Complaint ("Compl."), Dkt. 1.) Although Plaintiff's complaint and an original summons were served on Defendant on February 28, 2019 (*see* Dkt. 6), no answer was ever filed. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered a certificate of default on July 1, 2019. (Entry of Default, Dkt. 9.) On September 3, 2019, Plaintiff moved for a default judgment, statutory damages, and full costs including reasonable attorneys' fees. (Notice of Motion for Default Judgment, Dkt. 10.) On October 31, 2019, the Court ordered Plaintiff to supplement her motion for default judgment with respect to the damages calculations; Plaintiff's letter in response was submitted on November 13, 2019. (Dkt. 14.)

  For the reasons set forth below, the Court grants Plaintiff's motion with respect to liability and grants in part, and denies in part, Plaintiff's demand for damages, fees, and costs. The Court

orders that Plaintiff be awarded $8,890 as follows: $1,000 in statutory damages under the Copyright Act; $5,000 in statutory damages under the DMCA; $2,450 in attorneys' fees; and $440 in filing costs.

## BACKGROUND

On February 26, 2019, Plaintiff filed a complaint seeking damages against Defendant for violation of the Copyright Act and the DMCA. (Compl., Dkt. 1.) Plaintiff alleges that Defendant ran an article on its website that featured a photograph of a taxidermy animal (the "Photograph") that she had taken, published on her Flickr account, and copyrighted. (*Id.* ¶¶ 7–11.) Plaintiff states that the Photograph was registered with the United States Copyright Office and was given registration number VA 2-062-374. (*Id.* ¶ 10.) Moreover, Plaintiff asserts that she is "the sole owner of all right, title[,] and interest in and to the Photograph, including the copyright thereto" (*id.* ¶ 9), and that "Telegraph did not license the Photograph from Plaintiff for its article, nor did Telegraph have Plaintiff's permission or consent to publish the Photograph on its Website" (*id.* at ¶ 12). Plaintiff only alleges one act of infringement by Defendant. (*See id.* ¶¶ 11–12.)

## DISCUSSION

### I.  Standard of Review

Under Federal Rule of Civil Procedure 55, the process for seeking default judgment against a party who "fails to defend" in a matter includes two steps: "first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 128 (2d Cir. 2011) (internal quotation marks and citation omitted). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* The Court finds that the entry of default was properly entered. Plaintiff filed proof that service was executed, pursuant to Federal Rule of Civil Procedure

2

4(c), on March 1, 2019 (*see* Dkt. 6), and Defendant has not answered or otherwise appeared in this action. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)."[1] *Mickalis Pawn Shop*, 645 F.3d at 128. "Assuming the plaintiff demonstrates proper service, the decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). Default judgments "track[] the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "However, it is also true that a district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 645 F.3d at 137 (internal quotation marks and citation omitted). Therefore, the Court is "required to determine whether [Plaintiff's] allegations establish [Defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted).

---

[1] Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

## II. Liability

### A. Copyright Act Claim

Plaintiff brings a claim against Defendants under §§ 106 and 501 of the Copyright Act. Section 106 provides, *inter alia*, that the owner of copyrighted material "has the exclusive rights to do or authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]" 17 U.S.C. § 106(1)–(3). Section 501(b) provides a right of action for infringement by "[t]he legal or beneficial owner of an exclusive right under a copyright." *Id.* § 501(b). Thus, the Copyright Act is a "strict liability regime" that "makes parties who infringe on [the copyright holder's] rights liable for damages, regardless of whether they had knowledge that the content was infringing." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 47 (2d Cir. 2019) (Walker Jr., J., concurring) (citing 17 U.S.C. § 504).

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (same). The first element can be satisfied "by the introduction into evidence of a Copyright Office certificate of registration." *Sheldon v. Plot Commerce*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). A certificate of registration may serve as "*prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." *Id.* (internal quotation marks and citation omitted). Typically, after the presentation of such a certificate, the

burden of proof shifts to Defendant "to show the invalidity of Plaintiff[']s copyrights," *id.* at *11 (internal quotation marks and citation omitted), but, in a default judgment motion, "a timely certificate is sufficient to establish validity," *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *5 (E.D.N.Y. Jan. 3, 2019) (citations omitted). Plaintiff has provided evidence of such a certificate. (Dkt. 1-3.) The Court concludes that Plaintiff has established ownership of a valid copyright for the Photograph.

"As to the second element, the infringement of original work, a plaintiff must allege a violation of the exclusive rights provided to a copyright owner under 17 U.S.C. § 106 and must meet a minimal burden to establish the work is original." *Korzeniewski*, 2019 WL 312149, at *6 (citing *Sheldon*, 2016 WL 5107072, at *11). Plaintiff meets this burden. Plaintiff alleges that Defendant, who owned no rights to the image, reproduced and displayed it, and that Plaintiff had never granted any permission for use of the image. (Compl., Dkt. 1., ¶¶ 7–12.) These allegations are sufficient to establish that Defendant violated Plaintiff's exclusive rights. *See, e.g.*, *Reilly v. Plot Commerce*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *5 (S.D.N.Y. Oct. 31, 2016) ("The well-pleaded allegations of plaintiff's complaint demonstrate that . . . defendant infringed [plaintiff's] copyright by producing and displaying an unauthorized copy of the Photograph on its website." (internal record citations omitted)); *Sheldon*, 2016 WL 5107072, at *12 ("As to [Defendant's] infringement, [Plaintiff] alleges that [Defendant] did not have authorization . . . to reproduce, distribute, display, or create derivative works of the Photograph. Without authorization . . . [Defendant] reproduced and displayed cropped versions of the Photograph. Thus, the allegations in the Complaint establish [Defendant's] direct violation of the exclusive rights of the copyright owner." (internal record citations, quotation marks, and citations omitted)).

5

Plaintiff has also proved that her work meets the originality requirement mandated by Article I, § 8, cl. 8 of the Constitution. *See Feist Publ'ns, Inc.*, 499 U.S. at 346. The burden of proving originality is "minimal" and "simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind, in other words, 'the fruits of [the author's] intellectual labor.'" *Sheldon*, 2016 WL 5107072, at *11 (alterations in original) (quoting *Boisson v. Banian. Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)). "The necessary originality for a photograph may be founded upon, among other things, the photographer's choice of subject matter, angle of photograph, lighting, determination of the precise time when the photograph is to be taken, the kind of camera, the kind of film, the kind of lens, and the area in which the pictures are taken." *Id*. at *11 (quoting *E. Am. Trio Prods. Inc. v. Tang Elec. Corp*., 97 F. Supp. 2d 395, 417 (S.D.N.Y. 2000), *appeal dismissed*, 243 F.3d 559 (Fed. Cir. 2000)). Plaintiff's complaint sufficiently alleges that the photograph at issue is a result of her own creative process, for Plaintiff alleges that she is a professional photographer who "licens[es] her photographs to online and print media" and that she is the one who "photographed a taxidermy animal." (Compl., Dkt. 1, ¶¶ 5, 7; *see also* Photograph, Exhibit A to the Complaint, Dkt. 1-1.) The Court concludes that Plaintiff's Photograph is an original work and thus meets the originality requirement.

Plaintiff, having satisfied the two elements for a claim of infringement under the Copyright Act, has demonstrated Defendant's liability as to that claim.

### B. DMCA Claim

Plaintiff brings an additional claim under §1202(b) of the DMCA. Section 1202(b) provides:

No person shall, without the authority of the copyright owner or the law—

> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). A private right of action is provided by 17 U.S.C. § 1203(a).

"Courts have applied this statute in a straightforward manner such that Plaintiffs here need only allege (1) the existence of Copyright [m]anagement [i]nformation on the work in question; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Sheldon*, 2016 WL 5107072, at *13 (quoting *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)). Copyright management information ("CMI") "includes, inter alia, the title or identifying information of the work, author or copyright owner, the terms and conditions of use of the work, and identifying numbers or symbols referring to such information." *BanxCorp*, 723 F. Supp. 2d at 609 (citing 17 U.S.C. § 1202(c)(1)–(3), (6)–(7)). Plaintiff's complaint sufficiently alleges these elements. Plaintiff charges that, without her consent or knowledge, Defendant removed the copyright information from the image and added its own copyright information when it published the image on its own website. (Compl., Dkt. 1, ¶¶ 21, 23–24; *see also* Website Images, Exhibit D to the Complaint, Dkt. 1-4.) These allegations, assumed to be true, are sufficient to establish liability under § 1202(b) of the DMCA. *See, e.g., Reilly*, 2016 WL 6837895, at *6 (finding that plaintiff's allegations of defendant's knowing and

7

intentional removal of plaintiff's CMI so as to facilitate a copyright infringement were "sufficient to establish liability under subsection 1202(b)" of the DMCA).

The Court therefore finds that Plaintiff has adequately established Defendant's liability pertaining to her claims under § 1202(b) of the DMCA.

## III. Damages

Plaintiff requests the full amount of statutory damages allowable under the Copyright Act and the DMCA, as well as full costs, including attorneys' fees. (Compl., Dkt. 1, at ECF[2] 5–6; Statement of Damages, Dkt. 12, ¶¶ 3–4; Declaration of Richard Liebowitz ("Leibowitz Decl."), Dkt. 11, ¶¶ 13, 21–23.) On October 31, 2019, the Court ordered supplemental briefing, directing Plaintiff to explain why she is asking for the maximum amount of statutory damages, and to "explain how her request for statutory damages is in line with how other district courts in this Circuit have considered this issue." (October 31, 2019 Order.) Plaintiff's response stated that "Plaintiff ha[d] previously submitted the evidence necessary for the Court to grant the relief requested" (Dkt. 14, at 1), and simply reiterated the argument that persons asking for statutory damages need not provide evidence of actual damages (*see generally id.*). The Court notes that Plaintiff failed to elaborate on the factors about which the Court inquired in its supplemental briefing order.

For the reasons explained below, the Court grants Plaintiff's request for damages in part and modifies it as follows. Plaintiff shall be awarded a total of $8,890: $1,000 in statutory damages under the Copyright Act; $5,000 in statutory damages under the DMCA; $2,450 in attorneys' fees; and $440 in filing costs.

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

### A. Statutory Damages Pursuant to the Copyright Act

Plaintiff seeks to recover statutory damages under the Copyright Act in the amount of $30,000, the maximum provided for under the statute. (*Id*. at 2.) The Court awards Plaintiff $1,000.

The Copyright Act provides for statutory damages as follows:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c)(1). Moreover, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2). "In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." *Id.*

Plaintiff argues that she should be awarded the maximum statutory damages amount of $30,000 under the Copyright Act, because that amount is consistent with cases in this Circuit in which defendants have defaulted in copyright infringement actions (Leibowitz Decl., Dkt. 11, ¶ 17), and because Defendant "operates in the publishing industry [and] is therefore presumed to have knowledge of copyright law" (*id.* ¶ 18). Plaintiff also contends that the Court need not consider evidence of Plaintiff's actual losses. (*Id.* ¶¶ 15–16.)

Courts determining statutory damages pursuant to § 504(c) consider the following factors:

(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010); *see also Prokos v. Grossman*, No. 19-CV-4028 (BMC), 2020 WL 729761, at *2 (E.D.N.Y. Feb. 13, 2020) (quoting *Bryant*) (same). "Plaintiff gets the benefit of the doubt in applying these factors because [Defendant]'s default makes it difficult for [her] to obtain discovery showing [Defendant]'s finances." *Prokos*, 2020 WL 729761, at *2.

First, this Court rejects Plaintiff's notion that it need not consider evidence of actual losses or licensing fees in assessing appropriate statutory damages. As the *Mantel* court explained when assessing a substantially similar claim brought by the same plaintiff's counsel:

> On the one hand, Plaintiff's allegations and exhibits support a finding that Defendant acted willfully: Defendant copied Plaintiff's photograph directly from another online article, ignored the notation that Plaintiff was the photographer, and removed the gutter credit. Furthermore, as Plaintiff points out, Defendant's status as a publisher in online media makes its infringement more blameworthy. Defendant's default only serves to bolster these allegations.
>
> On the other hand, Plaintiff presents no evidence of lost revenue or other damages. Statutory damages need not be directly correlated to actual damages, but they ought to bear some relation to actual damages suffered. As a professional photographer who licensed the photograph at issue, Plaintiff presumably could have supplied information on his lost revenue, including licensing fees. He chose not to do so. Although he is not required to submit such evidence to obtain statutory damages, the seeming absence of tangible harm is something the Court may consider.

*Mantel v. Smash.com Inc.*, No. 19-CV-6113 (FPG), 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019) (internal quotation marks and citations omitted). In setting the statutory damage award, the court in *Mantel* considered both the plaintiff's choice not to supply any information on lost revenue, including attorneys' fees, and the "seeming absence of tangible harm." *See id.*

Here, the only factors for which Plaintiff has provided any—albeit very little—information are the first, fourth, fifth,[3] and sixth factors.[4] With respect to Defendant's state of mind—

---

[3] The Court notes that the fifth factor weighs in Plaintiff's favor simply by virtue of Defendant's default.

[4] The Court considered the Default Judgment Orders submitted by Plaintiff in support of her damages demand, but finds them unpersuasive in fixing a damage award in this case. As the Honorable Brian Cogan aptly explained when Plaintiff's counsel submitted the *exact same* "evidence," with the exception of two Orders (*Compare* Dkt. 12-1, *with Seelie v. The Original Media Grp. LLC*, No. 19-CV-5643 (BMC), Dkt. 13-1):

> As to the DMCA claim, plaintiff has merely submitted copies of judgments awarding $10,000, so I have no idea of how those courts arrived at that figure. I can only note that there are plenty of cases that have awarded less than $10,000 for DMCA violations, particularly where the plaintiff has failed to provide much assistance in applying the relevant factors.
>
> This illustrates a bigger problem with plaintiff's presentation. The fact that out of the hundreds of Copyright Act and DMCA cases filed in this Court and the Southern District of New York over the last eighteen years (a very large number of them prosecuted by this plaintiff's counsel), a relative handful have awarded the amount of statutory damages he seeks here, does not give me any guidance as to the amount of statutory damages that should be awarded in this case. For every case that plaintiff cites that awarded the same amounts he is seeking, there are more cases awarding different amounts—including many cases brought by this plaintiff's counsel in which he sought the same amounts that he is seeking here.

*Seelie v. The Original Media Grp. LLC*, No. 19-CV-5643 (BMC), 2020 WL 136659, at *3 (E.D.N.Y. Jan. 13, 2020) (internal citations omitted).

The Court has similarly reviewed the cases Plaintiff cites for the proposition that "[t]he requested amount is consistent with a long[]line of cases in this Circuit which award $30,000 where defendant has defaulted in a copyright infringement action" (Statement of Damages, Dkt. 12, ¶ 8 (collecting cases)), and finds them unpersuasive. In each of those cases, the plaintiff seeking a default judgment provided more information to support a finding with respect to the relevant *Bryant* factors.

This Court also echoes Judge Cogan's conclusion that

> [n]one of the cases [plaintiff's counsel] has failed to cite are controlling authorities, so he has not committed any ethical violation by not disclosing them. Nevertheless, counsel's cherry-picking of cases that support statutory awards that at least lean toward windfall recoveries without disclosing that, in a number of single-instance infringements against obscure defendants like the one here, he has recovered mere

willfulness—the Court credits Plaintiff's contention that an entity working within the publishing industry should have at least some knowledge of copyright laws. *Cf. Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (finding that a publisher should have particular awareness of the importance of copyright law).[5] However, in other cases where plaintiffs have received maximum or substantial statutory damages for violation of the Copyright Act, there is additional evidence of willfulness and allegations of actual awareness on the part of the defendants of their infringing activity; there is usually at least one cease-and-desist letter sent to the defendant, and, frequently, requests for injunctive relief. *See, e.g.*, *Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.*, No. 12-CV-5456 (KMW) (AJP), 2013 WL 174226, at *3 (S.D.N.Y. Jan. 17, 2013) (noting two cease-and-desist letters in awarding $30,000 in statutory damages), *report and recommendation adopted*, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631–32 (S.D.N.Y. 2011) (granting

---

hundreds of dollars in statutory damages, renders his truncated presentation of the case law of little use[.]

*Seelie*, 2020 WL 136659, at *5.

[5] The Court recognizes that, while Defendant is a foreign limited liability company based in London, and could therefore theoretically assert that it is unfamiliar with the laws of this country, Plaintiff sufficiently alleges that Defendant is registered with the Delaware Department of Corporations to do business in the United States (Compl., Dkt. 1, ¶ 6) and should thus be familiar with the laws of the United States.

The Court is also mindful that, given Plaintiff's allegations as to Defendant's location and place of incorporation, it *might* lack personal jurisdiction over Defendant. However, the court may not *sua sponte* raise a question of personal jurisdiction. *See Mickalis Pawn Shop, LLC*, 645 F.3d at 133. Should it be appropriate, Defendant may raise lack of personal jurisdiction in any collateral action to enforce the judgment. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Gunée*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

plaintiff's request for $150,000 in statutory damages in copyright case where defendant received notice that it no longer had authorization to use copyright prior to lawsuit); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 478–82 (S.D.N.Y. 2001) (finding many copyright infringements and awarding various amounts in damages ranging from $2,500 to $100,000 depending on whether the infringement in a given time period was willful); *cf. Prokos*, 2020 WL 729761, at *2 ("[Defendant] established itself as a repeat copyright offender, virtually touting itself to [its client that] because 'this does happen on occasion to me, and some ways is scammey [sic] . . . .' It is clear that [Defendant] has no respect for copyright law and feels that it ought to be able to dictate the terms on which it may publish copyrighted material." (alterations in original)). Moreover, even in situations with a "paucity of evidence," willfulness combined with multiple acts of infringement could necessitate a larger award for the purpose of future deterrence of apparent systematic behavior. *See E. Am. Trio Prods. Inc.*, 97 F. Supp. 2d at 419–20.

In this case, there is only one alleged act of infringement, there are no cease-and-desist letters, there are no requests for injunctive relief, and there is no evidence of any actual harm. This leads to the conclusion that the infringing conduct was *de minimis*. The Court therefore fixes the amount of statutory damages for the Copyright Act violation at $1,000—an amount above the statutory minimum, to account for the willful actions of Defendant and the need to deter others—but well below the statutory maximum given the dearth of other evidence.

### B. Statutory Damages Pursuant to the DMCA

Plaintiff seeks damages for the violation of Section 1202(b) of the DMCA in the amount of $10,000. For the reasons enumerated below, the Court awards Plaintiff $5,000 in statutory damages. *See, e.g.*, *Mantel*, 2019 WL 5257571, at *4 (awarding same amount for § 1202(b)

violation in action involving the same plaintiff's counsel where there was "evidence of willfulness but also a lack of evidence of direct injury").[6]

The DMCA allows for a plaintiff to recover an award of statutory damages in the range of $2,500 to $25,000 for each violation of Section 1202. *See* 17 U.S.C. § 1203(c)(3)(B). In determining the amount of statutory damages to award, "courts typically assess the 'circumstances of the violation' and willfulness of the violation." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019) (internal citation omitted). The Court incorporates its findings, *supra*, with respect to the willfulness of the violation. The Court again notes the circumstances of the DMCA violation in this case—there was only one act of infringement, Plaintiff took no action to cure the violation, such as by sending a cease-and-desist letter or application for injunctive relief, and Plaintiff has submitted no evidence of actual harm in support of her application. As such, the

---

[6] The Court is mindful of the question of dual recovery that the Copyright Act and DMCA statutes present. The majority of cases that have assessed statutory damages in an action brought under these two statutes have considered the statutory awards separately. However, quite recently, Judge Cogan has deviated from this approach in a case where, as here, the same conduct was at the core of both the Copyright Act and DMCA claims:

> Although I recognize that many cases have awarded separate damages under the Copyright Act and the DMCA, I decline to do that here. The DMCA emphasizes one factor that is applicable in this case – defendant's removal of the accreditation notation that was part of plaintiff's licensee's publication. That is an aggravating factor, but I can adequately address it by including it in the mix of factors in determining the statutory award under the Copyright Act. It has long been the law in intellectual property cases that a plaintiff cannot recover under different intellectual property statutes or theories for the same injury. Since the range of statutory damage awards is somewhat larger under the Copyright Act as opposed to the DMCA, it is not difficult to increase the award under the former as a means of accommodating the violation of the latter.

*Seelie*, 2020 WL 136659, at *5 (internal quotation marks and citations omitted). The Court appreciates the common-sense appeal of Judge Cogan's reasoning in *Seelie* but finds that, because the DMCA and Copyright Act have different elements and are intended to deter somewhat different conduct, the Court should undertake a separate damages analysis for each claim.

Court awards $5,000 in statutory damages for the DMCA violation, a number consistent with that set by other district courts within this Circuit that have considered substantially similar circumstances. *See e.g.*, *Seelie*, 2020 WL 136659, at *5; *Mango*, 356 F. Supp. 3d at 378; *Myeress v. Elite Travel Grp. USA*, No. 18-CV-340 (AJN), 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018); *Reilly*, 2016 WL 6837895, at *5.

## C. Attorneys' Fees and Costs

Plaintiff requests that the Court award costs and attorneys' fees as permitted by the Copyright Act. *See* 17 U.S.C. § 505. An award under that statute "is not automatic, but rather 'lies within the sole and rather broad discretion of the court.'" *Sheldon*, 2016 WL 5107072, at *18 (quoting *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006)). While "there is no precise rule or standard, [] courts look to a non-exhaustive list of factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Reilly*, 2016 WL 6837895, at *12 (internal quotation marks and citations omitted) (quoting *Mahan v. Roc Nation, LLC*, No. 14-CV-5075 (LGS), 2015 WL 4388885, at *1 (S.D.N.Y. July 17, 2015)). Based on Defendant's default and failure to offer a defense to Plaintiff's claims, attorneys' fees should be awarded in this case. *See id*.

When analyzing a request for attorneys' fees, a court must first determine the "lodestar" amount, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case," also known as the "presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The "reasonable hourly rate" is determined by considering case-specific variables such as, *inter alia*, the complexity of the case, the amount

of work required, the attorney's expertise, and awards in similar cases. *Arbor Hill*, 522 F.3d at 190. "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiff's counsel requested attorneys' fees in the amount of $2,975 at $425 per hour. Mr. Leibowitz argues that he is entitled to that amount because he is the founding member and managing partner at his firm, which "specializes in copyright enforcement of photographs and videos," and he has thereby "developed an expertise in the field." (Liebowitz Decl., Dkt. 11, ¶ 22.) The Court notes that, although Mr. Liebowitz's title is "partner," he has only been practicing law for about five years. (*See id*.) And, while Mr. Liebowitz bases his "expertise" on his firm having filed 1,500 copyright lawsuits since January 2016, he makes no representation as to the percentage of these cases that he has personally handled. (*Id*.)

The Court finds $425 per hour an unreasonable rate. "The prevailing rates for attorneys in the E.D.N.Y are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020) (internal quotation marks and alterations omitted) (collecting cases). Considering Mr. Liebowitz's relatively short time practicing and the lack of clarity around his actual expertise,[7] the Court

---

[7] The Court takes note of its sister courts' repeated concerns regarding Mr. Liebowitz's practice. *See, e.g.*, *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC), 2020 WL 468904, at *3, *3 n.3 (S.D.N.Y. Jan. 29, 2020) ("Mr. Liebowitz is notorious in this District for his litigation strategy." (collecting cases)); *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *1 (S.D.N.Y. July 10, 2019) ("[I]t is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Leibowitz alone."); *Polaris Images Corp. v. Cable News Network, Inc.*, 365 F.

regards him as a junior partner or senior associate, and finds $350 per hour to be a generous rate consistent with the amount that other courts have awarded him. For example, in *Whitehead v. Mix Unit, LLC*, a case decided approximately one year ago, the court found:

> [Plaintiff] seeks $4,987.50 in attorney's fees (14.25 hours of work at a $350 hourly rate) . . . . Richard Liebowitz, Esq. is a founding member and managing partner at Liebowitz Law Firm, PLLC and represents [Plaintiff]. While Liebowitz has failed to provide his year of admission to the bar despite being specifically directed to do so in the inquest order, records of the New York State Unified Court System reflect that he was admitted to the bar in 2015. Liebowitz also failed to provide cases addressing his proper hourly rate based on his years of experience. Instead, he contends that his $350 hourly rate is "well below what others in this district have found . . . reasonable for partners" and provides a string cite with minimal analysis to support his assertion. Nonetheless, other courts in this District have determined that in similar copyright actions, a $350 hourly rate was reasonable for Liebowitz. Therefore, I recommend approving a rate of $350 per hour for Liebowitz in this case.

No. 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *5 (S.D.N.Y. Jan. 31, 2019) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2019 WL 1746007

---

Supp. 3d 340, 342 (S.D.N.Y. 2019) ("The Court notes, however, as have others in this District, that Polaris's counsel, Mr. Richard Liebowitz of the Liebowitz Law Firm, PLLC, is a repeat player as plaintiff's counsel in hundreds of copyright actions and that counsel's practices in some of those cases have raised concerns that test the limits of the Court's presumption of good faith."); *Pereira v. 3072541 Canada Inc.*, No. 17-CV-6945 (RA), 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) ("The Court finds particularly concerning Mr. Liebowitz's repeated failures to follow the orders and rules of this Court and others within the district, as well as his propensity to take unreasonable positions and to omit crucial facts—or even to make outright misrepresentations—in an apparent attempt to increase costs and extort unwarranted settlements."); *Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013 (DLC), 2018 WL 1363497, at *2 (S.D.N.Y. Mar. 15, 2018) ("It is troubling that the motion for reconsideration continues the pattern of omissions and misrepresentations that has plagued Mr. Liebowitz's earlier submissions in this action."); *Reynolds v. Hearst Commc'ns, Inc.*, No. 17-CV-6720 (DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) ("Mr. Liebowitz failed to comply with orders in this litigation, as he has in other lawsuits."), *reconsideration denied*, 2018 WL 1602867, at *2 (S.D.N.Y. Mar. 29, 2018); *Rudkowski v. MIC Network, Inc.*, No. 17-CV-3647 (DAB), 2018 WL 1801307, at *3 n.3 (S.D.N.Y. Mar. 23, 2018) ("caution[ing]" Mr. Liebowitz for making misrepresentations to the court); *McDermott v. Monday Monday, LLC*, No. 17-CV-9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018) (calling Mr. Liebowitz "a known copyright 'troll'").

(S.D.N.Y. Apr. 18, 2019). In setting Plaintiff counsel's hourly rate, and deciding not to raise it from the amount awarded by the *Whitehead* court in January 2019, the Court also considered the relative simplicity of this case, based on its own experience and observing, for example, that it took counsel only two and a half hours in total to review the case file, conduct due diligence, and draft and file the complaint. (*See* Liebowitz Decl., Dkt. 11, at ECF 7.)

Mr. Liebowitz submitted documentation that he spent seven hours working on this case. (*Id.*) The Court thus awards Plaintiff $2,450 in attorneys' fees. Though awarding Mr. Liebowitz attorneys' fees in this action, the Court takes this opportunity to reiterate its concerns about Mr. Liebowitz's conduct in this, and apparently, other cases of this nature. *See* note 4 *supra* (discussing, *inter alia*, counsel's "cherry-picking" the few cases that support his maximum statutory damages request while ignoring the more numerous cases litigated by the same attorney awarding far less). Because of these concerns, the Court warns Mr. Liebowitz that, should he continue to engage in this type of misleading conduct in another case before this Court, the Court will consider whether sanctions are appropriate pursuant to Federal Rule of Civil Procedure 11.

Plaintiff asks for costs in the total amount of $440 for the $400 court filing fee and the $40 fee for service upon the New York State Secretary of State.[8] (*Id*.) "Attorneys' fees may include 'reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Reilly*, 2016 WL 6837895, at *13 (quoting *Noble v. Crazetees.com*, No. 13-CV-5086 (PAE) (HBP), 2015 WL 5697780, at *13 (S.D.N.Y. Sept. 28, 2015)). That request is granted.

---

[8] Although Plaintiff's counsel failed to substantiate his request for the filing fee "a court may [nonetheless] take judicial notice of the payment of a filing fee and, therefore, award that cost." *Rudler*, 2020 WL 473619, at *12.

18

**CONCLUSION**

For the reasons set forth above, the Court finds that Plaintiff has sufficiently proven liability under Section 501 of the Copyright Act and Section 1202(b) of the DMCA. Accordingly, the Court grants Plaintiff's motion for default judgment, and grants in part, and denies in part, Plaintiff's request for damages, fees, and costs. The Court awards Plaintiff $8,890 as follows: $1,000 in statutory damages under the Copyright Act, $5,000 in statutory damages under the DMCA, $2,450 in attorneys' fees, and $440 in filing costs. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 13, 2020
      Brooklyn, New York